STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Appeal of | } | |
| Friends of Curtis Pond | } | Docket No. 172-9-99 Vtec |
| | } | |
| | } | |

<u>Decision and Order on Motions for Summary Judgment</u>

A group of Appellants appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Calais ruling that Appellee-Applicants' proposed summer camp is a permitted use in the Resource Recreation and Shoreland zoning districts. Appellants are represented by Stephanie J. Kaplan, Esq.; Appellee-Applicants Charles L. Rubner and Pathways Ministries, Ltd. are represented by Philip Zalinger, Esq.; the Town of Calais is represented by Gloria K. Rice, Esq. Appellants and Appellee-Applicants have each moved for summary judgment on the legal question of whether the proposed use is a permitted use, a conditional use, or is prohibited in the districts in which it is located. In connection with their motions, they have stipulated that the following facts are not in dispute.

Appellee-Applicant Charles L. Rubner owns approximately 219 acres, with dwellings and barn, off the Worcester Road in Calais, Vermont, of which he leases approximately 208 acres to Appellee-Applicant Pathway Ministries, Ltd. He has retained the main dwelling and approximately 10 acres as his principal residence. The 208-acre leased property will be referred to as the project property. It contains the barn, except that a small L-shaped part of the barn is not being leased to Pathway and will continue to provide a private horse barn and greenhouse for the Rubner residence.

Approximately 18 acres of the project property consists of open fields and meadow; the balance of the project property is wooded. The project property has 4000 continuous feet of frontage on Curtis Pond. Under the Calais Zoning Ordinance, the portion of the project property located within 800 feet of the shoreline is in the Shoreland zoning district; the remainder is located in the Resource Recreation zoning district.

Pathway Ministries, Ltd. (Pathway) is a Vermont non-profit, public-benefit corporation, without members. 11B V.S.A. §6.03. It is exempt from federal income

1

taxation under 26 U.S.C. §501(c)(3). Its corporate powers are exercised and its affairs are managed by a board of directors. It was formed to engage in charitable activities and to advance religious principles through establishment and operation of a summer camp focusing on sharing Christianity and promoting spiritual growth. The program is intended to provide a wilderness experience as a complementary companion to religious and spiritual development.

Pathway plans to establish a residential summer camp on the project property to operate for one-week sessions over a twelve-week period in the months of June, July, August and September. The camp will be attended by adolescent members of church groups. The program is limited solely to invited groups of adolescents representing church organizations which share a compatible theological bond with Pathway Ministries. The camp will not be open to the public at large. Not more than forty-five people (including adolescents and their counselors) will attend each one-week session of the camp. In addition to these people, Pathway staff will consist of not more than ten people, with up to six of those people living on-site, in rooms provided in the barn.

Permanent improvements on the project property are proposed to include interior renovations to the existing barn, installation of a subsurface waste water disposal system[1], and construction of a short driveway and a small parking lot. Other improvements to the property include the siting of eight tent platforms, erection of a ropes course apparatus, construction of a basketball court and volleyball court, and installation of a wooden dock and platform on the west shore of Curtis Pond. The barn on the project property has an existing recreation room and basketball area. It is proposed to be improved to add a kitchen and dining hall, bathrooms and showers for the campers and staff, two sleeping quarters for use by up to six staff members, a nurse's station, meeting rooms, a climbing wall, and staff areas. An existing logging road off the Worcester Road is proposed to be

---

[1] The Wastewater Management Division of the Agency of Natural Resources has issued a Water Supply and Wastewater Disposal Permit (WW-5-1276) for this project. The permit, as revised, approves a subsurface sewage disposal system with a capacity of 2,500 gallons per day, to serve a maximum of 55 persons. The permit allows the seasonal use of portable toilet units to serve remote areas on the project property.

improved for use as a driveway, with parking for not more than eight vehicles provided in an existing clearing at the end of the road. A sign conforming to the Zoning Ordinance is planned to be erected near the Worcester Road right-of-way.

Camper groups will arrive weekly on Sunday and depart the following Saturday. The camp's programmed activities consist of five scheduled days of outdoor events: 1) canoeing, 2) hiking, 3) biking, 4) rock climbing, and 5) ropes course. All programmed activities except the ropes course will take place off the project property. Volleyball and basketball will occur on-site, while canoe instruction and swimming sessions will occur from the dock on Curtis Pond. Dining, lavatory, rainy-day and evening bible study meeting activities will also take place in the barn on the project property.

Campers and their counselors will reside at tent sites consisting of three so-called "pod" areas, each of which is proposed to have a fire pit and a portable toilet. Two of the areas are proposed to consist of three 14' x 18' x 7' platform tents (eight participants[2]); the third area will consist of two 12' x 14' x 7' platform tents (four participants[3]).

---

[2] If the listed number of participants is per tent, the total available capacity of all the tents would be 56, although the proposed limit of participants at any session is 45 (not including the permanent staff of ten).

[3] See footnote 2.

A ropes course will be created within a 75' x 75' perimeter, to consist of cables, ropes and other attachments affixed to and among existing trees. Only brush will be cut and cleared to accommodate the ropes course. Walking and hiking trails will be fashioned by cutting brush but no trees will be cut. All trails are designed to be in conformance with the State of Vermont Department of Forests, Parks and Recreation State Lands Hiking Manual. Primary trails will have a 6' clearance width and a 10' clearance height. Secondary trails will have a 4' clearance width and an 8' clearance height. Primary trails will connect the parking area to the tent sites and ropes course and will connect the tent site[4] to the meadow. Existing logging trails will remain and be considered primary trails. All other trails will be secondary, including the dock access trail.

The location of the canoe access trail to Curtis Pond was relocated from a prior proposal to avoid a Class II wetland and its associated 50-foot buffer strip. There are Class III wetlands on the property but these are outside the areas proposed for construction. The proposed trails will be located at least fifty feet from any Class II or Class III wetland. The canoe dock is located in an area along the shoreline of Curtis Pond known to contain the rare plant: White water-crowfoot (Ranunculus longirostris).

A seasonal T-shaped dock extending or encroaching into Curtis Pond a distance of 25 horizontal feet will be installed at the shore of Curtis Pond. The width of Curtis Pond at the dock site is approximately 275 feet. The surface area of the proposed canoe dock consists of 200 square feet. A 6' x 50' walkway will be placed along the shoreline[5]. It will

---

[4] This was written in the singular in the parties' stipulation, although there appear to be three tent sites.

[5] The parties' stipulation stated that the walkway would be placed "in a perpendicular fashion." The Court cannot determine whether the parties meant perpendicular to the dock or perpendicular to the shoreline, and therefore has omitted the phrase. It is not essential to the present decision.

not be a permanent installation but will be nominally anchored with pipe supports driven to a depth not to exceed 30 inches.

The dock will be used weekly for two sessions of approximately three hours each to provide canoe instruction for up to 24 campers at any one time. The instruction will utilize six to eight canoes paddled to the site from the Vermont Department of Fish and Game public access at the southerly end of Curtis Pond. The canoes will be removed from the pond and returned to the camp when the instruction sessions are completed. Not more than 24 campers will be allowed to swim at limited times from the dock by sign-up only. No swimming program is included as a camp activity and no swimming instruction is provided. No swimming will be permitted after 8:30 p.m.

Pathway expects to obtain financial support through donations solicited from individuals and churches. Church groups will pay a fee to Pathway for camp attendance. Church groups may require campers to contribute to the cost of attendance.

The third of six uses listed in §IV(3)(B) of the Zoning Ordinance as permitted uses in the Resource Recreation zoning district is: "public and private non-commercial outdoor recreation, wildlife refuges, and scenic areas." Similarly, the third of seven uses listed in §IV(4)(B) of the Zoning Ordinance as permitted uses in the Shoreland zoning district is: "non-commercial public and private outdoor recreation, wildlife refuge and scenic areas."

The first of nine uses listed in §IV(3)(C) of the Zoning Ordinance as conditional uses in the Resource Recreation zoning district is: "commercial recreation uses." The ninth category of use listed in §IV(3)(C) of the Zoning Ordinance as a conditional use in the Resource Recreation zoning district is: "any other use or land development not specifically described above, but deemed consistent with the purposes of this district by the Board of Adjustment." Similarly, the first of seven uses listed in §IV(4)(C) of the Zoning Ordinance as conditional uses in the Shoreland zoning district is: "commercial outdoor recreation, including marinas and campgrounds." The seventh category of use listed in §IV(4)(C) of the Zoning Ordinance as a conditional use in the Shoreland zoning district is also: "any other use or land development not specifically described above, but deemed consistent with the purposes of this district by the Board of Adjustment."

The use category "religious and charitable institution" is not specifically mentioned in the Resource Recreation or Shoreland districts; it is a conditional use in the Village and

5

Rural Residential zoning districts. The Zoning Ordinance defines "Commercial[6] Use" in §I(8) as: "[the] provision of facilities, goods or services by a person to others in exchange for payment of a purchase price, fee, or contribution, donation or other object having value." Within the category of "Outdoor Recreation (Recreation facility)," the Zoning Ordinance defines "Recreation Facility, Commercial" in §I(8) as: "[a] recreation facility operated as a business and open to the public for a fee." It defines "Recreation Facility, Private" in §I(8) as "[a] recreation facility operated by a non-profit organization, and open only to bona fide members and guests of such non-profit organization. The Zoning Ordinance does not otherwise define non-commercial recreation.

The proposed camp operation does not fall within any of the listed permitted uses in either the Resource Recreation or the Shoreland zoning districts. Nor, as discussed below, does it meet the Zoning Ordinance's definitions of the listed conditional uses. The ZBA will be free to consider it as a conditional use in both districts, and to apply the conditional use standards under the Zoning Ordinance, but only if the ZBA first determines that the uses proposed within each district are "consistent with the purposes of [that] district," as stated in §§IV(3)(A) and (4)(A), respectively.

The proposal is not an outdoor recreation use because more than incidental aspects of it will take place inside the barn, and therefore it is not a permitted use, regardless of whether it is operated on a commercial or non-commercial or private basis. See, In re Appeal of Spencer, Docket No. 24-2-98 Vtec (Vt. Envtl. Ct., May 17, 1999). Nor is it a public use. While it falls within the Zoning Ordinance's definition of "commercial" use, it does not fall within the Ordinance's definition of "commercial recreation", because it is not open to the public, even though a fee is charged. In any event, the Ordinance's definitions of "recreation facility" all fall within the larger definition of "outdoor recreation" and do not apply to indoor recreational uses. Further, even if it were to meet the definition of a private

---

[6] Compare the analysis of "commercial purpose" in Act 250. In re Spring Brook Farm Foundation, Inc., 164 Vt. 282 (1995); In re Baptist Fellowship of Randolph, Inc., 144 Vt. 636 (1984).

non-commercial recreation use, a conditional use permit would be required in the Resource Recreation district because the uses proposed within that district are indoor recreational and residential uses, as well as outdoor recreational uses. In the Shoreland district, even the listed conditional uses, as they pertain to recreation, are specifically restricted to outdoor uses. Thus, the only conditional use categories which could pertain to this proposal are those found in §IV(3)(C)(9) and §IV(4)(C)(7), requiring a preliminary determination of whether the proposed uses are consistent with the purposes of the respective zoning districts.

Appellants also have requested that this Court make that initial determination under §IV(3)(C)(9) and §IV(4)(C)(7) of whether the proposed uses are consistent with the purposes of the Shoreland or the Resource Recreation zoning districts. That determination must be made in the first instance by the ZBA, before it could come before this Court on appeal. All that the Court had before it in the present case was the ZBA's determination that the proposed project is a permitted use. This Court has determined that it is not.

Accordingly, based on the foregoing, Summary Judgment is granted in favor of Appellants and is denied to Appellee-Applicants. The proposed project may be considered by the Zoning Board of Adjustment under the standards for a conditional use, but if and only if the ZBA first makes the initial determination under §IV(3)(C)(9) and §IV(4)(C)(7) of whether the proposed uses are consistent with the purposes of the Shoreland or the Resource Recreation zoning districts. Any appeal from any decision rendered by the ZBA after such consideration would be a new case and not a continuation of the present appeal, which is concluded by this order.

Done at Barre, Vermont, this 4th day of April, 2000.

_____
Merideth Wright
Environmental Judge